# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

00

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3007-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JUAN A. VILLATORO, a/k/a
JUAN A. VILLATOROVALLE,
and JUAN A. VALLE,

     Defendant-Appellant.

_____

Submitted March 18, 2025 – Decided July 16, 2025

Before Judges Bishop-Thompson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-05-0347.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Colleen Kristan Signorelli, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Juan Villatoro, a non-United States citizen, appeals from a Law Division order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. On appeal, defendant argues:

POINT I

[DEFENDANT] IS ENTITLED TO RELIEF ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY MISADVISING HIM ABOUT THE DEPORTATION CONSEQUENCES OF HIS PLEA AND PRESSURING HIM INTO A PLEA THAT HE OTHERWISE WOULD NOT HAVE TAKEN.

We agree with the PCR judge's conclusion that defendant's trial attorney provided effective assistance by properly advising him of the deportation consequences of his guilty plea, as demonstrated in defendant's assertions made in his plea form, plea colloquy, and throughout numerous court appearances during the litigation. We affirm.

I.

Defendant pleaded guilty to second-degree endangering the welfare of a child by a caretaker, N.J.S.A. 2C:24-4(a)(1). The facts and procedural history are set forth at length in the PCR judge's written decision that accompanied the order under review. In June 2018, during the arraignment and with the assistance of a court-certified Spanish interpreter, the trial judge informed

2

defendant—who was then represented by a public defender—that: "You need to speak to an immigration attorney. Because if you are found guilty of this offense, . . . you will be deported." At a December 2018 status conference, the judge again advised defendant to consult an immigration attorney. Defendant replied that he was speaking to an immigration attorney "tomorrow."

In January 2019, defendant retained a private attorney with experience in both criminal and immigration law. At a subsequent hearing, defendant's trial attorney represented to the trial judge he advised defendant of his right to speak to an immigration attorney and the consequences that could arise from either a guilty plea or a conviction. Counsel also represented that defendant was seeking advice from an immigration attorney. The trial judge also advised defendant to consult with an immigration attorney before returning to court.

In April 2019, during the plea hearing, defendant acknowledged that his trial attorney read and explained every question on the plea forms in Spanish and that he understood each question as evidenced by the signed plea forms. In regard to Question 17(b) on the plea form, defendant responded "no" to the question inquiring whether he was a citizen of the United States. Defendant's response to the remaining subparts of Question 17 were consistent with the answers provided to the judge regarding possible immigration consequences.

A-3007-22

During the plea colloquy, the judge questioned defendant about his citizenship status and the potential immigration consequences of his guilty plea. Defendant replied "yes" and that he completed Question 17 and all the sub-parts on the form about immigration. He responded "no" to two questions: whether he was a United States citizen, and whether he needed more time to speak with an immigration attorney. Defendant responded "yes" to questions he had been advised of the possible immigration consequences of pleading guilty, and that he understood that he could be deported. When asked whether he still wanted to plead guilty knowing the potential consequences, defendant answered "yes."

Defendant then provided a factual basis for the plea. The judge accepted defendant's guilty plea after finding the factual basis was established and that the plea was entered knowingly and voluntarily.

Four months later, on August 2, 2019, defendant was sentenced to a flat five-year prison term, reporting and registration requirements pursuant to Megan's Law, N.J.S.A. 2C:7-2(f), and parole supervision for life. In April 2022, after serving his prison sentence, defendant was placed in Immigration and Customs Enforcement (ICE) custody.

Defendant did not appeal his conviction; rather, in May 2022, defendant filed a self-represented PCR petition, asserting that he was "coerced" into

4

pleading guilty and had not been informed of the possible immigration consequences before entering his guilty plea. Assigned PCR counsel filed a supplemental brief, arguing the cumulative errors made by the trial attorney denied defendant the right to effective assistance of counsel. PCR counsel further argued that an evidentiary hearing was required because genuine issues of material fact and law were in dispute.

Following oral argument, the PCR judge, who had not presided over defendant's plea hearing, granted an evidentiary hearing, finding defendant had established a prima facie case of ineffective assistance of trial counsel and there was a material dispute regarding his trial attorney's advisement as to the immigration consequences of his plea.

The PCR judge conducted an evidentiary hearing with the assistance of a Spanish interpreter. Defendant's arraignment attorney testified that she advised defendant to speak with an immigration attorney before and after the arraignment. She further testified that it was her standard practice to refer defendants facing potential immigration consequences to a private attorney.

The PCR judge also heard testimony from defendant's trial attorney, who stated he advised defendant of his right to consult with an immigration attorney and informed him that pleading guilty or being convicted could result in

 A-3007-22

immigration consequences. Defendant's trial attorney further testified he reviewed a chart detailing all criminal offenses that could subject defendant to deportation if convicted. Defendant's trial attorney also confirmed that he specifically advised defendant of the potential immigration consequences.

Defendant testified that both his arraignment and trial attorneys advised him to consult with an immigration attorney. Defendant further stated his trial attorney informed him that a conviction could result in deportation. However, according to defendant, his trial attorney stated that he "should not worry" about deportation because it was his first offense, and he had maintained legal permanent residence status[1] for a significant period of time.

After analyzing defendant's claim under the two-prong Strickland test,[2] the PCR judge denied defendant's PCR petition. The PCR judge concluded that no significant or numerous errors had occurred, and defendant failed to demonstrate that his trial attorney acted unreasonably or that any such conduct

---

[1]  A lawful permanent resident, "green card holder," is an immigrant who is lawfully authorized to live and work permanently within the United States. See Off. of Homeland Sec. Stat., Lawful Permanent Resident (Feb. 11, 2025), https://ohss.dhs.gov/topics/immigration/lawful-permanent-residents.

[2]  Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).

A-3007-22

caused him prejudice. Citing both the plea transcript and testimony of the arraignment and trial attorneys, the PCR judge found defendant's assertion that the first time that he learned of the immigration consequences was during sentencing was "false." Lastly, the PCR judge rejected defendant's contention that he was pressured into pleading guilty. The PCR judge emphasized the plea colloquy, during which the judge thoroughly reviewed the advantages and disadvantages of proceeding to trial. The PCR judge also noted defendant's responses affirming it was his decision to plead guilty, he was doing so freely and voluntarily, and that no one was forcing or threatening him to enter the guilty plea.

II.

Before us, defendant argues the PCR judge erred in finding he did not establish Strickland's two prong test for ineffective assistance of trial counsel because he was not fully advised of the deportation consequences of his plea. In essence, defendant reiterates the argument previously presented to the PCR judge.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 420 (2004). The de novo standard of review also applies to mixed questions of fact and law. Ibid. (citing McCandless v. Vaughn, 172 F.3d 255,

265 (3d Cir. 1999)).  Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony."  State v. Nash, 212 N.J. 518, 540 (2013).  Where, as here, the PCR judge conducts an evidentiary hearing, we must uphold the PCR judge's factual findings, "'so long as those findings are supported by sufficient credible evidence in the record.'"  State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).

Additionally, we defer to a trial judge's findings that are "'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15).

To establish a prima facie claim of ineffective assistance of counsel, defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial.  Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.  Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52.

Where a PCR petition arises from a plea bargain, "a defendant must prove that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial." State v. Gaitan, 209 N.J. 339, 351 (2012) (alteration in original) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)) (internal quotation marks omitted). Under Nuñez-Valdéz, a defendant may establish an ineffective assistance of counsel claim if his or her attorney provided false or inaccurate advice that the plea would not result in deportation. 200 N.J. at 139-42. However, under Nuñez-Valdéz, a defendant's claim of ineffective assistance of trial counsel fails when he or she does not present any evidence of mistaken advice, and the defendant was on notice of the potential immigration consequences of the plea. Gaitan, 209 N.J. at 375-76.

In this matter, the alleged ineffectiveness centered on whether defendant's trial attorney properly advised him regarding the immigration consequences of his guilty plea to endangering the welfare of a child. We take no issue with the PCR judge's credibility findings as they are based upon his assessment of the live testimony presented by defendant during the evidentiary hearing and both

A-3007-22

the arraignment and trial attorneys, as well as the plea hearing transcript. The record provides ample evidence that defendant lacked credibility, as demonstrated by his inconsistent statements regarding whether he was advised about the possible immigration consequences. The PCR judge found defendant "chose not to seek the advice of an immigration attorney" and his claim that he was not advised to speak with an immigration attorney was a "bald assertion," which is "insufficient to support a prima facie case of ineffectiveness." State v. Blake, 444 N.J. Super. 285, 299 (App. Div. 2016) (quoting State v. Cummings, 321 N.J. Super. 154, 171 (App. Div. 1999)).

Based on the governing law and the record before us, defendant's argument is unavailing. We perceive no error in the PCR judge's finding that "[defendant had not shown] that his trial [attorney's] performance was deficient by an objective standard of reasonableness" and "[t]here [was] nothing to suggest that his trial [attorney] did not affirmatively advise [defendant] of the immigration consequences."

Prejudice is not presumed and must be proven by the defendant. Fritz, 105 N.J. at 52. We likewise find no error in the PCR judge's determination that defendant was not prejudiced of either the arraignment or trial attorney's performance "but by his own failure to seek the advice of an immigration

attorney."  The PCR judge further determined defendant had not established that he would not have pleaded guilty but for his trial attorney's errors.

We are satisfied the PCR judge properly determined there was ample evidence spanning from arraignment through to the plea allocution that demonstrated defendant was both advised and fully aware of the potential immigration consequences of his guilty plea.  Therefore, we discern no basis to disturb the PCR judge's denial of defendant's PCR petition following an evidentiary hearing.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

11                                                                    A-3007-22